**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**JAMES ARTHUR MALLETT, III,**

     **Plaintiff,**

     v.                        **CASE NO. 24-3131-JWL**

**ROGER SOLDAN, et al.,**

     **Defendants.**

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff James Arthur Mallett, III, is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I. Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Saline County Jail in Salina, Kansas ("SCJ"). The Court granted Plaintiff leave to proceed in forma pauperis. (Doc. 3.)

Plaintiff alleges that after he was involved in a physical altercation with Deputy Garcia on April 22, 2024, Plaintiff was placed on the SCJ's two-man escort restraint policy by Captain Stanley Fruits. (Doc. 1, at 2.) Plaintiff alleges that the two-man restraint policy began on April 25, 2024, when Plaintiff showered in "4-point restraint shackles," but he was not placed in shackles again until May 2, 2024. *Id*. On May 2, 2024, Plaintiff was told by Corporal Addo "that the officers has [sic] been messing up by letting him out on his hour-outs unshackled, so from here on you will be shackled on your hour-out with 2 officers to supervise you." *Id*. at 4.

1

Plaintiff alleges that he was moved from segregation to general population on May 28, 2024, "at which point he was allowed to move freely with-in his cell-block (A-700) to interact with other inmates as well as Corrections Officers without any restraints." *Id*. When he was moving outside of his cellblock (i.e. court, medical, attorney visit) he was escorted by two officers and shackled in 4-point restraints. *Id*.

On July 7, 2024, Plaintiff was placed back in segregation for a 10-day sanction. *Id*. It was amended to a three-day sanction and he was released back to general population on July 10, 2024. *Id*. During these three days, he was allowed out of his cell for one hour each day free of restraints. *Id*.

Plaintiff was placed back on 2-man restraints on July 16, 2024, but it was only to be implemented if Plaintiff returned to segregation. *Id*. On July 17, 2024, Plaintiff was returned to disciplinary segregation for a 30-day sanction and was placed back on two-man restraints. *Id*. Plaintiff alleges that Corporal McManigal told Plaintiff that Caption Fruits said Plaintiff was placed back on 2-man restraints because of the incident between Plaintiff and Deputy Garcia on April 22, 2024. *Id*.

Plaintiff claims that none of his disciplinary reports throughout his incarceration at the SCJ involved threats, batteries, or assaults against staff at the SCJ, "except the incident with Deputy Garcia which transpired on April 22, 2024." *Id*. at 5.

Plaintiff alleges that the two-man restraint policy violates his Eighth Amendment right to be free from cruel and unusual punishment. *Id*. at 6. Plaintiff alleges that Sheriff Soldan, Major Melander,[1] and Captain Fruits, should have known that their internal policy is unconstitutional and therefore they are subject to supervisory liability. *Id*. Plaintiff alleges that Defendants

---

[1] Plaintiff does not name Melander as a defendant.

retaliated against him by subjecting him to "constant harassment and/or occasional opposite sex shower viewing (P.R.E.A.)." *Id*. at 7.

Plaintiff states that he filed inmate request forms asking to be taken off of the 2-man restraint policy. *Id*. at 8. He states that he filed a grievance on July 25, 2024, and is waiting for a response. *Id*.

Plaintiff names as defendants: Roger Soldan, Saline County Sheriff; Stanley Fruits, SCJ Captain/Jail Administrator; Angie Finch, SCJ Lieutenant; Tina Miller, SCJ Sergeant; Michael Sutton, SCJ Lieutenant; Benjamin McManigal, SCJ Corporal; and William Hill, SCJ Corporal. Plaintiff seeks declaratory relief, injunctive relief, and compensatory, punitive, and nominal damages. *Id*.

## II. Statutory Screening

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts

all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at

4

1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Restraint Policy

Plaintiff alleges that use of the SCJ's restraint policy violates his Eighth Amendment right to be free from cruel and unusual punishment.[2]  A prison official violates the Eighth Amendment when two requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).[3] "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Id*.  To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm."  *Id*.; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate

---

[2] Plaintiff does not allege excessive force or that he was injured by the restraints.  *See Taylor v. Larson*, 505 F. App'x 475, 478 (6th Cir. 2012) (where plaintiff did not allege that he suffered any pain from the shackles, "he did not experience more than a *de minimis* use of force and he does not make out an Eighth Amendment violation").

[3] The same standard applies to pretrial detainees.  The Tenth Circuit has held that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims."  *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see also Hooks v. Atoki*, 983 F.3d 1193, 1203–04 10th Cir. 2020) (declining to extend *Kingsley's* exclusively objective standard for pretrial detainees' excessive force claims to Fourteenth Amendment deliberate indifference claims).

comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.  Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety.  *Id*.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"  *Id*.  It is not enough to establish that the official should have known of the risk of harm.  *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered."  *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  "While no single factor controls . . . the length of exposure to the conditions is often of prime importance."  *Id*.  As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make

out a constitutional violation decreases.   Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

Plaintiff may be in pretrial detention while housed at the SCJ.   "[T]he Fourteenth Amendment 'prohibits *any* punishment' of a pretrial detainee without due process." *Hubbard v. Nestor*, 830 F. App'x 574, 583 (10th Cir. 2020) (unpublished) (citing *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013); *see also Bell v. Wolfish*, 441 U.S. 520, 535 – 37 (1979) (holding that the government may subject a pretrial detainee to restrictions and conditions of confinement without triggering procedural due process protection so long as such measures don't amount to punishment).   "[A] showing of an expressed intent to punish on the part of detention facility officials"—standing alone—is sufficient to demonstrate "the disability is imposed for the purpose of punishment." *Id*. (citing *see Bell*, 441 U.S. at 538, 99 S.Ct. 1861; *see also Blackmon*, 734 F.3d at 1241).

"Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell*, 441 U.S. at 540.   "[I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id*.   The Supreme Court has warned that these decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations,

courts should ordinarily defer to their expert judgment in such matters." *Id*. at 540, n.23 (citations omitted).

Plaintiff acknowledges that he was subjected to the restraint policy after a physical altercation with a deputy at the SCJ. Plaintiff has pending criminal charges for Battery on LEO and Assault on LEO based on the incident. *See State v. Mallett*, Case No. 2024-CR-278 (District Court of Saline County, Kansas). Plaintiff also acknowledges that he was placed in segregation for other disciplinary reports that he does not dispute. He merely claims that none of the disciplinary reports involved threats, batteries, or assaults against staff at the SCJ, "except the incident with Deputy Garcia which transpired on April 22, 2024." (Doc. 1, at 5.)

Courts addressing similar situations have found that the use of restraints did not violate the Eighth Amendment and did not constitute impermissible punishment of a pretrial detainee. *See Ware v. Nelson*, 1998 WL 154585, at *4 (D. Kan. 1998) (finding no Eighth Amendment violation where plaintiff was forced to wear leg restraints for every trip outside of his cell); *see also Saleh v. Ray*, 2003 WL 23484639, at *6–7 (D. Kan. 2003), *aff'd* 107 F. App'x 865 (10th Cir. 2004) (finding no cruel and unusual punishment where plaintiff made no allegation that his movement was restricted while he was restrained or that he was deprived of food, water, or bathroom breaks, and plaintiff was free to move about in his cell).

"Requiring an inmate who is in disciplinary segregation to shower in handcuffs and ankle shackles does not evince deliberate indifference to an inmate's health or safety." *Sanders v. Hopkins*, 1997 WL 755276, at *2 (10th Cir. 1997) (unpublished) (citing *Branham v. Meachum,* 77 F.3d 626, 631 (2nd Cir. 1996) (requiring an inmate on "lockdown" to shower while wearing leg irons does not state a claim under the Eighth Amendment); *LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir. 1993) (requiring an inmate who had assaulted prison guards and fellow inmates to

shower while wearing handcuffs and ankle shackles does not state a claim under the Eighth Amendment).  It also does not amount to punishment where a plaintiff poses a security risk.  *See Sanders*, 1997 WL 755276, at *2 ("The condition or restriction of requiring a pretrial detainee in disciplinary segregation to wear restraints while showering is reasonably related to the legitimate governmental objective of promoting security in the detention facility. Thus, under *Bell,* it does not amount to a 'punishment' which would violate the detainee's due process rights."); *see also Blackmon v. Sutton*, 734 F.3d 1237, at n.2 (10th Cir. 2013) (noting that in *Sanders*, "[t]his court upheld the restraint on the ground that the detainee had already proven himself a security threat to other inmates and the restraints were designed to address legitimate safety concerns").

Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm."  Plaintiff has also failed to allege "deliberate indifference" by any defendant or that he was subjected to impermissible punishment as a pretrial detainee.  Plaintiff should show good cause why his claims regarding the restraints should not be dismissed for failure to state a claim.

### 2.  Retaliation/Privacy/Harassment

Plaintiff also fails to state a claim of retaliation.  "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper."  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted).  The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3)

that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims. Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive.

Plaintiff makes a conclusory allegation in his Complaint that he was subjected to "constant harassment and/or occasional opposite sex shower viewing (P.R.E.A.)." (Doc. 1, at 7.) Plaintiff provides no factual support for this allegation. In his attachment to the Complaint, he sets forth the general parameters of the 2-man restraint policy and states that "[i]f the detainee wishes to shower he or she is forced to do so often times in front of opposite sex staff members, (although there is a saloon style apx 3.5 ft by 3.5 ft swinging door) depending on the distance or angle staff can see above & beyond and/or below & above as they onlook from their position." (Doc. 1–1, at 1.) Plaintiff also attaches a declaration by another inmate that states that: "While I/M Mallett showered Mrs. Garcia and officer stood apx 3 feet from the shower. Although to the

side of the shower, Garcia spoke to him while he showered and if chose too [sic] could have seen Mallett through the reflection in the glass." *Id.* at 5. Plaintiff's allegations speak in terms of possibilities and do not suggest that Plaintiff was actually observed by staff members of the opposite sex while showering.

"[T]he Tenth Circuit generally recognizes only a limited right to privacy in the context of prison life." *Williams v. Reed*, 2018 WL 4826219, at *3 (D. Kan. 2018) (citing *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995)). The Supreme Court has recognized that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Telesford v. Annucci*, 693 F. App'x 1, 2–3 (2nd Cir. 2017) (quoting *Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984)).

Courts have held that "a prison policy forcing prisoners to . . . be exposed to regular surveillance by officers of the opposite sex while naked – for example while in the shower or using a toilet in a cell – would provide the basis of a claim on which relief could be granted . . . [and] [i]n contrast, accidental viewing of a prisoner's naked body by a prison guard of the opposite sex is not a constitutional violation." *Householder v. Jordan*, 2024 WL 4254333, at *1 (W.D. Ky. 2024) (quoting *Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004), and *Jones v. Lawry*, No. 2:19-CV-49, 2019 WL 2482361, at *7 (W.D. Mich. June 14, 2019)).

"[F]ederal courts have held that a detention facility's placement of a camera in the restroom and shower areas does not offend the Constitution." *Johnson v. Chaffee Cnty. Det. Ctr.*, 2020 WL 13826429, at *1 (D. Colo. Oct. 7, 2020) (citing *see, e.g., Garrett v. Thaler*, No. 13-40599, 560 F. App'x 375, 380–81 (5th Cir. 2014) (upholding decision that cameras in restroom, shower and dressing areas of state prison did not violate Fourth Amendment); *Brooks v. Overton*,

No. 02-2351, 68 F. App'x 703 (6th Cir. July 11, 2003) (unpublished) (affirming district court's *sua sponte* dismissal of prisoner's claim that defendants had violated his rights by placing a video camera in the showers of the prison based on the prison's legitimate interest in maintaining security and safety); *accord Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir. 1990) ("[W]e are convinced that opposite-sex surveillance of male inmates, performed on the same basis as same-sex surveillance, is not "unreasonable" under the *Turner* analysis. Whatever minimal intrusions on an inmate's privacy may result from such surveillance, whether the inmate is using the bathroom, showering, or sleeping in the nude, [they] are outweighed by institutional concerns for safety and equal employment opportunities."); *see also Klein v. Pyle,* 767 F. Supp. 215 (D. Colo. 1991) (being viewed in the nude by members of the opposite sex on *isolated* occasions does not constitute a constitutional claim); *cf. Cumbey v. Meachum,* 684 F.2d 712, 714 (10th Cir. 1982) (An inmate's limited right to privacy may be violated where prison officials regularly watch inmates of the opposite sex shower)).

In this case, Plaintiff does not allege that he was exposed even accidentally to members of the opposite sex while showering.  He suggests that it is possible, in theory, if the staff member chooses to look above or below the saloon-style door.  Plaintiff has failed to state a claim based on an alleged denial of privacy.

Plaintiff does not elaborate on how he believes he was harassed.  The Tenth Circuit has found that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (*quoting Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992)).  Plaintiff has failed to provide any factual support for a claim of harassment.

Plaintiff should show good cause why his claims based on retaliation, harassment, and a denial of privacy, should not be dismissed for failure to state a claim.

**3. Exhaustion**

Plaintiff states in his Complaint that he filed a grievance on July 25, 2024, and is waiting for a response.  (Doc. 1, at 8.)  Plaintiff signed his Complaint five days later, on July 30, 2024. An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted).

**IV.  Response Required**

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this case without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **November 4, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated October 3, 2024, in Kansas City, Kansas.**

> **S/ John W. Lungstrum**
> **JOHN W. LUNGSTRUM**
> **UNITED STATES DISTRICT JUDGE**